IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT H. HALE, *et al.*,

      Plaintiffs,                  No. CIV 2:12-cv-1462-GEB-JFM (PS)

    vs.

WORLD SAVINGS BANK, *et al.*,

      Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

          On September 27, 2012, the court held a hearing on defendants' June 25, 2012 motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike pursuant to Federal Rule of Civil Procedure 12(f). Robert Hale appeared in pro per. Plaintiff Catherine Hale did not make an appearance. Tim Ceperley appeared for defendants World Savings Bank ("World Savings") and Golden West Savings Association Service Company ("Golden West"). This action was referred to the undersigned pursuant to Local Rule 302(c)(21). On review of the motions, pleadings filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

/////

/////

/////

1

BACKGROUND

1.  Introduction

On May 31, 2012, Robert and Catherine Hale (collectively, "plaintiffs") initiated this action against defendants Golden West, World Savings, and Does 1-20, setting forth the following claims related to real property located at 3243 Congressional Circle, Fairfield, California 94534 ("the Subject Property"): wrongful foreclosure, fraud, quiet title, declaratory relief, and violations of the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Truth In Lending Act ("TILA"), 15 U.S.C. § 1641(g). Plaintiffs seek damages and injunctive relief.

At the hearing on this matter, Robert Hale averred that non-judicial foreclosure proceedings have not yet been initiated as to the Subject Property. Instead, plaintiffs have received "notices of pre-foreclosure" from Wells Fargo Bank and, previously, from Wachovia Bank.[1] As of the date of the hearings, plaintiffs continue to reside at the Subject Property.

2.  Allegations in Plaintiffs' Complaint

On February 20, 2004, plaintiffs executed a promissory note for $551,000.00 with World Savings in order to purchase the Subject Property. Defs.' Req. for Judicial Notice ("RJN"), Ex. A.[2] A Deed of Trust ("DOT") was filed with the Solano County Recorder's Office on February 27, 2004, and identifies World Savings as the Beneficiary and Golden West as the Trustee. Id., Ex. B. Plaintiffs identify Defendant Doe 6 as the Servicer of the loan. Compl. at 3, ¶ 9.

---

[1] As discussed more fully infra, Wells Fargo is the successor-in-interest to Wachovia, which was the successor-in-interest to the named defendant herein, World Savings.

[2] This court takes judicial notice of the public records referenced herein. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

Plaintiffs' claims are premised on two general theories.  First, plaintiffs assert that none of the defendants can show proper receipt or possession of either the Promissory Note or Deed of Trust, and, as such, do not have a perfected and secured claim in the Subject Property. Next, plaintiffs allege that defendants violated the express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of plaintiffs' mortgage.

On June 25, 2012, defendants filed a motion to dismiss and a motion to strike. Plaintiffs filed an opposition on August 16, 2012.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Matters of public record include pleadings and other papers filed with a court.  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept as true conclusory allegations,

unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Finally, a federal court has an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction over the removed action sua sponte, whether the parties raised the issue or not"); accord Rains v. Criterion Sys., Inc., 80 F.3d 339, 342 (9th Cir. 1996). Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." A–Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003) (citations and quotation marks omitted). The court must sua sponte dismiss a case for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); see also Scholastic Entmt., Inc. v. Fox Entmt. Group, Inc., 336 F.3d 982, 989 (9th Cir. 2003).

## DISCUSSION

A.   Motion to Dismiss

Because the court's jurisdiction over this case hinges on the presence of an actionable federal claim, the court turns to plaintiffs' federal claims first.

1.   Federal Claims

a.   The Real Estate Settlement Procedures Act

In this claim, plaintiffs contend defendants violated RESPA's provision prohibiting illegal kickbacks. See 12 U.S.C. § 2607. Plaintiffs assert that when defendants allegedly sold their mortgage, the defendants received back-end fees, which they did not disclose pursuant to RESPA. Defendants argue that plaintiffs' RESPA claim is time-barred.

/////

Congress enacted RESPA to shield home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). The purpose of RESPA was to effect certain changes in the settlement process that will result, inter alia, "in more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(1), (2).

RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f). Patague v. Wells Fargo Bank, N.A., 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010) (Armstrong, J.). Claims brought under § 2607 or 2608 are subject to a one-year statute of limitation, while claims under § 2605 are governed by a three-year statute of limitations, which commence to run when the violation occurs. 12 U.S.C. § 2614; Snow v. First Am. Title Ins. Comp., 332 F.3d 356, 359 (5th Cir. 2003) (RESPA claim accrues at closing).

Here, plaintiffs allege violations of Sections 8(a) and 8(b) of RESPA, which sets forth the anti-kickback provision. Each section applies only to settlement services. Section 8(a) prohibits the giving or accepting of any "fee, kickback, or thing of value" that is "incident to or a part of a real estate settlement service involving a federal related mortgage loan . . . ." Id. § 2607(a). Section 8(b) prohibits the giving or accepting of "any portion, split, or percentage . . . of any charge made or received for the rendering of a real estate settlement service" of unearned fees. Id. § 2607(b). Settlement services are those services necessary to close the loan (i.e., close escrow). According to HUD, " [s]ettlement means the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R. § 3500.2.

5

As noted earlier, the "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." Snow v. First American Title Ins. Co., 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. § 2601(a)). Plaintiffs closed the loan at issue here in February 2004, well more than a year prior to the complaint's May 31, 2012 filing to bar RESPA claims in connection with loan origination. The RESPA claim thus fails as untimely.

    b.  The Truth in Lending Act

      i.  Transfer of the Promissory Note

Plaintiffs next argue that defendants violated TILA when they failed to inform them of each transfer of the promissory note, in violation of 15 U.S.C. § 1641(g).

Section 1641(g), titled "Liability of Assignees," requires that when an entity purchases or is assigned the beneficial interest in a loan on a property, it must notify the borrower in writing within 30 days of when the loan is transferred. 15 U.S.C. § 1641(g). Subsection (g) lists the particular information that the assignee's notice must contain. This subsection only applies to the "new owner or assignee" of the debt. 15 U.S.C. § 1641(g). Section 1640 authorizes a civil action for violations of § 1641 for (1) actual damages, or (2) statutory damages that may included (a) damages equal to twice the amount of any finance charge or (b) for a credit transaction secured by real property an amount not less than $400 and not greater than $4000. 15 U.S.C. § 1640(a).

Under California law, the trustee of a deed of trust has no beneficial interest in the mortgage associated with the deed of trust. Heritage Oaks Partners v. First Am. Title Ins. Co., 155 Cal. App. 4th 339 (Cal. Ct. App. 2007). The trustee for a deed of trust has only two duties: (1) to foreclose the deed of trust upon default, or (2) when the secured debt is satisfied to convey the deed of trust to the borrower. Id. Due to the limited duties and lack of beneficial interest

assigned to the trustee of a deed of trust, federal courts in California hold that TILA does not apply to the trustee of a deed of trust. Guerrero v. Citi Residential Lending, Inc., 2009 WL 926973, at *4 (E.D. Cal. Apr. 3, 2009) (holding that TILA does not apply to the trustee of a deed of trust and explaining that the limited role of such a trustee under California law precludes TILA liability). Thus, plaintiff's TILA claim fails as to the trustee here, Golden West.

Defendant World Savings seek dismissal of this claim on the ground that the ownership of the note is the same today as it was in 2004. In support, defendant submits multiple documents to evidence that each holder of the note was the successor-in-interest to the previous owner of the note. These documents include (1) World Savings Bank's Certificate of Corporate Existence, dated April 21, 2006 and issued by the Office of Thrift Supervision, Department of the Treasury (RJN, Ex. C); (2) a letter dated November 19, 2007 from the Office of Thrift Supervision, Department of the Treasury, to the Vice President and Assistant General Counsel of Wachovia Corporation reflecting amendment of the bank's charter and bylaws to change its name from World Savings Bank, FSB to Wachovia Mortgage, FSB (id., Ex. D); (3) a Secretary's Certificate for Wachovia Mortgage, FSB, certifying that the attached Charter of Wachovia Mortgage became effective on December 31, 2007 (id., Ex. E); (4) a November 1, 2009 letter from the Comptroller of the Currency, Administration of National Banks, to the Vice President of Wells Fargo Bank, N.A., reflecting the conversion of Wachovia Mortgage FSB to a national bank with the name Wells Fargo Bank Southwest, effective November 1, 2009 (id., Ex. F); and, finally, (5) a computer printout of the history of Wachovia Mortgage from the Federal Deposit Insurance Corporation website (id., Ex. G). Defendant argues these documents are proper for judicial notice since they are copies of official acts or records of departments of the United States. Plaintiffs do not oppose defendant's request for judicial notice of these documents.

"These documents are properly subject to judicial notice under Federal Rule of Evidence 201." Ibarra v. Loan City, 2010 WL 415284, at *3 (S.D. Cal. Jan. 27, 2010) (finding

judicial notice of documents related to defendant's status as an operating subsidiary of a federal savings association proper); see also Gens v. Wachovia Mortgage Corp., 2010 WL 1924777, at *2 (N.D. Cal. May 12, 2010) (taking judicial notice of a letter issued by the Office of Thrift Supervision confirming World Savings' request to change its name to Wachovia); Biggins v. Wells Fargo & Co., 2009 WL 2246199, at *4 (N.D. Cal. July 27, 2009) (taking judicial notice of an order from the Office of Thrift Supervision). Therefore, Wells Fargo's request that these documents be judicially noticed is granted. Since Wells Fargo has shown that World Savings changed its name to Wachovia on or about December 31, 2007, and then changed its name again to Wells Fargo Bank Southwest, N.A. on or about November 1, 2009, plaintiffs' allegations against World Savings will be construed as allegations against Wells Fargo.

Having judicially noticed these documents, the record establishes that Wells Fargo is the successor-in-interest to Wachovia, which was the successor-in-interest to World Savings. It was thus unnecessary to assign the Deed of Trust to Wells Fargo since the original lender, World Savings, simply changed its name to Wachovia and then merged into Wells Fargo.

Also, insofar as plaintiffs' complaint can be read to argue that none of the defendants are in possession of the note and, as such, may not judicially foreclose on the Subject Property, the court notes first that this claim is premature as foreclosing proceedings have not yet been initiated against the Subject Property and, furthermore, that "[u]nder [California] Civil Code section 2924, no party needs to physically possess the promissory note." Sicairos v. NDEX West, LLC, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." Moeller v. Lien, 25 Cal. App. 4th 822, 830 (Cal. Ct. App. 1994).

Accordingly, this claim should be dismissed.

    ii.  Qualified Written Request

In their opposition, plaintiffs contend for the first time that defendants violated TILA, 15 U.S.C. § 1641(f)(2), through their failure to respond to the plaintiffs' qualified written

1 requests ("QWR").  Section 1641(f)(2) provides, in part, that "[u]pon written request by the
2 obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the
3 name, address, and telephone number of the owner of the obligation or the master servicer of the
4 obligation."  Id.  TILA establishes a private right of action against creditors and assignees for
5 violations of 15 U.S.C. § 1641(f)(2).  See Consumer Solutions REO, LLC v. Hillery, 2010 WL
6 14988, at *3 (N.D. Cal. 2010) (finding "TILA allows for a suit against a creditor or an assignee
7 but not a servicer except under narrow circumstances"); Fullmer v. JP Morgan Chase Bank, NA,
8 2010 WL 95206, at *9 (E.D. Cal. 2010) (holding that TILA "establishes a private of action and
9 provides for statutory damages for violations of TILA only against the creditor (the owner of the
10 obligation) and assignees").  This claim was not set forth in the complaint.  Accordingly, the
11 court will recommend that plaintiffs be granted leave to amend their complaint to state a claim
12 under TILA Section 1641(f)(2).

13         c.      The Fair Debt Collection Practices Act

14       Plaintiffs also purport to bring a claim under the FDCPA, though do not set forth
15 this claim as an enumerated claim in their complaint.  Regardless, plaintiffs aver that, when the
16 title and ownership of the Subject Property was transferred to others, the defendants lost their
17 ability to enforce, control or otherwise foreclose on the Subject Property.  Defendants do not
18 address plaintiffs' FDCPA claim in their motion to dismiss.

19       Nonetheless, the court is required to dismiss those claims over which it lacks
20 subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Generally, the FDCPA prohibits "debt
21 collectors" from engaging in various unlawful debt collection practices. 15 U.S.C. §§ 1692a &
22 1692e.  A "debt collector" includes any person "who regularly collects or attempts to collect,
23 directly or indirectly, debts owed or due or asserted to be owed or due another."  Id. § 1692a(6).
24 A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising
25 out of a transaction in which the money, property, insurance, or services which are the subject of
26 /////

1  the transaction are primarily for personal, family, or household purposes, whether or not such
2  obligation has been reduced to judgment." Id. § 1692a(5).

3          Though the Ninth Circuit has not yet decided whether the FDCPA applies to a
4  non-judicial foreclosure, courts within this Circuit have concluded that it does not constitute
5  "debt collection" under the FDCPA. See, e.g., Aniel v. EMC Mortg. Corp., 2011 WL 835879, at
6  *5 (N.D. Cal. Mar. 4, 2011); Hanaway v. JPMorgan Chase Bank, 2011 WL 672559, at *4 (C.D.
7  Cal. Feb. 15, 2011) ("Since a transfer in interest is the aim of a foreclosure, and not a collection
8  of debt, the foreclosure proceeding is not a debt collection action under the FDCPA."); Aniel v.
9  T.D. Serv. Co., 2010 WL 3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("allegations relating to the
10 FDCPA claim relate to foreclosure proceedings and courts throughout this circuit have
11 concluded that foreclosure does not constitute 'debt collection' under the FDCPA"); Deissner v.
12 Mortgage Elec. Regis. Sys., 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009) ("the activity of
13 foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the
14 meaning of the FDCPA."), aff'd, 2010 WL 2464899 (9th Cir. Jun. 17, 2010) (internal quotations
15 omitted); Landayan v. Wash. Mutual Bank, 2009 WL 3047238, at *3 (N.D. Cal. Sept. 18, 2009)
16 ("A claim cannot arise under FDCPA based upon the lender enforcing its security interest under
17 the subject deed of a trust because foreclosing on a mortgage does not constitute an attempt to
18 collect a debt for purposes of the FDCPA") (citing Maguire v. Citicorp. Retail Svcs., Inc., 147
19 F.3d 232, 236 (2d Cir. 1998) and Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.
20 1985)).

21         Plaintiffs' claims here arise from and relate to the foreclosure of the Subject
22 Property. The court thus finds that plaintiffs have not established that any named defendant
23 engaged in "debt collection practices" under the FDCPA. Accordingly, this claim should be
24 dismissed with prejudice.
25 /////
26 /////

d. Violation of the PSA

Finally, to the extent plaintiffs base their claims on the theory that defendants allegedly failed to comply with the terms of the PSA, the court notes that they lack standing to do so because they are neither a party to, nor a third party beneficiary of, that agreement. See In re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (holding debtors, as neither parties to nor third party beneficiaries of a PSA, lack standing to challenge mortgage assignment based on non-compliance with agreement); see also Junger v. Bank of Am., 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA."); Tilley v. Ampro Mortg., 2012 WL 33033, at *4 (E.D. Cal. Jan. 6, 2012) (holding plaintiff lacked standing to assert securitization of her loan violated terms of PSA, to which she was not a party); Bascos v. Fed. Home Loan Mortg. Corp., 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); cf. Lucia v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 1059, 1070-71 (N.D. Cal. 2011) (finding borrowers, who were neither parties to nor intended third party beneficiaries of Servicer Participation Agreement between Wells Fargo and Fannie Mae, lack standing to assert a breach of contract claim.)

Furthermore, theories that securitization undermines the lender's right to foreclose on a property have been rejected by the courts. See, e.g., Sami v. Wells Fargo Bank, et al., 2012 WL 967051 at *4–*6 (N.D. Cal. March 21, 2012) (rejecting arguments that securitization invalidates standing to foreclose and finding borrower has no standing to challenge violations of the terms of a PSA as improper securitization); Wadhwa v. Aurora Loan Servs., LLC, 2011 WL 2681483 at *4 (E.D. Cal. July 8, 2011) (rejecting argument that securitization, and assignment of the note to a REMIC invalidates interests other than the borrower's); Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (rejecting

11

1   argument that defendants' power of sale is lost by assignment of original promissory note to a
2   trust pool); Benham v. Aurora Loan Servs., 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009)
3   (rejecting same argument regarding trust pool); Reyes v. GMAC Mortgage LLC, 2011 WL
4   1322775, at *2 (D. Nev. Apr. 5, 2011) ("securitization of a loan does not in fact alter or affect
5   the legal beneficiary's standing to enforce the deed of trust"); see also Lane v. Vitek Real Estate
6   Indus. Group, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (noting that "[t]here is no stated
7   requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in
8   the Note to foreclose.  Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any
9   of their agents to initiate non-judicial foreclosure").  Clearly, proper securitization does not give
10  rise to a cause of action in California, and the party initiating the non-judicial foreclosure
11  proceedings need not be in possession of the promissory note.

12         2.      State Law Claims
13              Having dismissed all of plaintiffs' federal claims, the undersigned will
14  recommend that the court decline to exercise supplemental jurisdiction over the remaining state
15  law claims pursuant to 28 U.S.C. § 1367(c).

16  B.     Motion to Strike
17              Defendants have also filed a motion to strike portions of the complaint.
18  Specifically, defendants ask that the plaintiffs' request for punitive damages be stricken as they
19  are unavailable as a matter of law.   In light of the Ninth Circuit Court of Appeals holding that a
20  motion to strike cannot be used to strike a claim for damages on the grounds that the damages
21  sought are precluded as a matter of law, see Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970,
22  974-75 (9th Cir. 2010), this motion should be denied.

23              Based on the foregoing, IT IS HEREBY RECOMMENDED that:
24              1. Defendants' June 25, 2012 motion to dismiss be partially granted;
25              2. Defendants' June 25, 2012 motion to strike be denied;
26              3. Plaintiffs' state law claims be dismissed without prejudice; and

4. Plaintiffs' complaint be dismissed with leave to amend only their TILA claim as set forth in these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2012.

UNITED STATES MAGISTRATE JUDGE

/014;hale1462.mtd